53 CCPA

**DAIMLER–BENZ AKTIENGESELL-
SCHAFT, Appellant,**

v.

**CONSULTING ENGINEERS COUNCIL,
Appellee.**

**Patent Appeal No. 7495.**

United States Court of Customs
and Patent Appeals.

Dec. 16, 1965.

Von Maltitz, Derenberg, Kunin &
Janssen, Walter J. Derenberg, New York
City (Horst Von Maltitz, Louis Kunin,
New York City, of counsel), for appel-
lant.

Robert G. McMorrow, Washington, D.
C. (James Atkins, Russell L. Law, Wash-
ington, D. C., of counsel), for appellee.

Before WORLEY, Chief Judge, and
RICH, MARTIN, SMITH and ALMOND,
Judges.

ALMOND, Judge.

Daimler-Benz Aktiengesellschaft, here-
inafter Benz, appeals from the decision
of the Trademark Trial and Appeal
Board dismissing its opposition[1] to the
application[2] of Consulting Engineers
Council, hereinafter CEC, to register a
collective membership mark for indicat-
ing membership in a professional organi-
zation. Use since July 29, 1957 is as-
serted.

The CEC mark is reproduced below:

1. No. 41,596, filed February 15, 1962.

2. Serial No. 106,585, filed October 18,
1960.

Benz (opposer-appellant) alleges that CEC's mark, as used, so nearly resembles its mark relied on herein as to be likely to cause confusion, or to cause mistake, or to deceive within the purview of section 2(d) of the Trademark Act of 1946.

The Benz mark, referred to as the "Three-Pointed Star," consists of a three-pointed star within two concentric circles or a ring. Examples of the Benz mark as used and registered are depicted below:

There is no issue of priority. Use of the Benz mark antedates the year 1957.

Both parties took testimony and a stipulation of certain facts was filed on behalf of CEC.

The record discloses that Benz, a German corporation, is engaged, *inter alia*, in the manufacture of automobiles and diesel engines which have been continuously sold under the "three-pointed star" in the United States by its American subsidiaries, distributors and dealers. The diesel engines are adapted to marine use, installations in heavy refrigeration equipment, concrete mixers, oil pumps, irrigation units and other related power applications. The diesels have been extensively advertised in trade and business magazines, at trade shows, and through descriptive literature, all of which prominently displayed the "three-pointed star." Benz furnishes engineering and technical services relating to the use and application of its engines to its actual and potential customers. Its specification sheets and drawings display its mark. Testimony adduced by Benz indicates that its engineers have occasionally recommended the use of equipment not of its manufacture. The bulk of services, however, are rendered in connection with its own products. Apart from the above services, the Benz engineers and personnel have furnished repair and maintenance services to dealers and users of Benz engines and regularly conduct instruction courses for its dealer personnel and engine customers. The literature

employed in this connection carries the "three-pointed star" mark. The mark is also displayed on lapel pins and arm patches supplied to and worn by engineers, instructors and other personnel employed by Benz, its distributors and dealers. The record indicates a current price range of $700 to $50,000 for the Benz diesel engines.

The Benz automobile dealers display the "three-pointed star" on their sales and service premises. The automobiles, ranging in price from $4,000 to $13,000, have been extensively advertised in this country under the "three-pointed star" mark. In addition to training technical and service personnel employed by its dealers and distributors, Benz has continuously offered "full technical assistance by factory trained engineers" to its dealers. The record discloses that as of January 1, 1962 there were more than 56,000 Benz automobiles in operation in the United States.

CEC may be described as a federation of state or regional associations of consulting engineers. At the time testimony was taken herein, there were 38 such organizations which, in most instances, cover a state in their operational activities. Membership consists of three classes, viz., regional as above noted, derivative members consisting of individuals or firms affiliated with the regional, comprising approximately 1,500 members, and members at large represented by independent consulting engineers. Rules and regulations provide that "any consulting engineer in the United States who is an owner, principal or officer of his firm" may be eligible for membership. The scope of engineering services offered by CEC members includes a number of industrial consultants who have done work for automotive manufacturers. It appears from the record that at least one of CEC's members offers consulting services relating to various products and fields, including "Diesel electric generating plants and applications of Diesel engines to stationary power installations."

The mark which CEC seeks to register has appeared on all documents, brochures and work sheets furnished to its members. It has been used by members on professional stationery, business cards, lapel pins and decals to identify a member of the association. The bylaws provide that this mark may not be used on any engineering products or tools such as plans, specifications, blueprints and similar data which a client may see.

The record abundantly supports the finding of the board that:

> The objectives and purposes of applicant association are broadly to promote and safeguard the ethical standards of engineering and to aid in the advancement of the science of engineering through, inter alia, educational and research activities.
> * * *

It is apparent from the record that the long and extensive use of the "three-pointed star" has made it well known in the area of Benz service as identifying goods produced and services rendered. The Benz products amply qualify as expensive items of merchandise. As one witness stated: "No diesel engine that we are supplying into this market is casually purchased at all." This may well be said relative to the automobiles. It would logically follow that purchasers would constitute a discriminating class well aware of their needs and the sources of the goods.

It must be borne in mind as a significant and, we think, determinative factor that CEC seeks registration of a collective membership mark for "indicating membership" in a professional association of consulting engineers. The membership is precluded from the use of the mark for anything other than signifying membership in the association. One qualified to use the mark for such purpose is precluded from use of the mark in connection with the sale, advertising or rendition of services to identify their services. In short, the Benz mark

is a service mark, while the CEC mark is not. CEC as a composite entity renders no engineering services. Engineering services are rendered by members and, as noted by the board, such consulting services generally involve more than consideration of a product of a particular manufacturer. Membership services are relatively expensive. It is a reasonable assumption that municipalities, firms, contractors and others desiring such services would be more discriminating than those involved in the purchase of a particular product.

It is further pertinent to point out that such services as are rendered by Benz are incidental to and related to the sale of its goods as contradistinguished from the services offered by the CEC members not identified by the collective membership mark.

 We agree with the board that cases relating to the care exercised by a discriminating class of purchasers are not controlling on the question of likelihood of confusion. Such care is, however, a relevant factor proper to be considered with other pertinent factors in resolving the issue of likelihood of confusion under section 2(d) of the Trademark Act.

In view of the above, we agree with the conclusion of the board and its decision in dismissing the opposition, embodied in the following statement:

Considering therefore this factor [discriminating class of purchasers] along with the nature of opposer's goods and extent of its services as opposed to the nature and character of the applicant association and the services rendered by its members and the distinct differences between the marks of the parties when considered in their entireties, a distinction which is readily apparent from even a cursory examination of the respective marks * * *, it is our opinion that there is no reasonable likelihood of any association or affiliation or connection of applicant and/or its members with opposer, and that hence opposer would not be damaged by the registration sought by applicant.

The decision of the board is accordingly affirmed.

Affirmed.

SMITH, J., took no part in the decision of this case.